Gavigan, Appellant, *v.* Bookbinders, Machine Operators, and Auxiliary Workers Local Union No. 97.

Argued January 11, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Joseph E. Gallagher*, with him *James W. McNulty*, and *O'Malley, Morgan, Bour & Gallagher*, for appellants.

*Paul A. McGlone*, for union, appellee.

*Sheldon Rosenberg*, with him *Nogi, O'Malley & Harris*, for corporation, appellee.

OPINION BY MR. JUSTICE MUSMANNO, March 13, 1962:

When does a journeyman bookbinder's seniority rights in the plant of the defendant company begin— as of the date he was first employed in the defendant's plant, or as of the date he acquired journeyman's status? That is the question involved in this appeal.

The plaintiffs are journeymen bookbinders in the Bindery Department of the Haddon Craftsmen, Inc., Division of the International Textbook Company, and members of the Bookbinders, Machine Operators, and Auxiliary Workers Local Union 97, Scranton, International Brotherhood of Bookbinders. They filed an action in equity against the Union and the Company to compel them to accept a journeymen's seniority list based upon the date of classification as journeymen in

the bindery department of the Company's Scranton plant. They also asked for a nullification of the seniority provision in the collective bargaining agreement of May 25, 1959 alleging it violated the Union constitution. They further requested a judgment in money for asserted loss of wages. The defendants filed answers with new matter, the plaintiffs replied, the defendants were granted a rule to show cause why the action should not be stayed pending arbitration, which rule was later discharged. The defendants filed preliminary objections which were overruled and motions for judgment on the pleadings were denied. After considering oral testimony and documentary evidence the chancellor dismissed the bill, exceptions were filed to the adjudication by the plaintiffs, and the court en banc affirmed the chancellor's decree nisi, making it final.

An appeal followed to this Court.* Counsel for the plaintiffs has filed a formidable brief and at oral argument presented a strong and able case in behalf of his clients. He emphasized the history of the relationship between the Union and the Company, and pointed out that in various collective bargaining agreements of the past, the interpretation he urges was accepted as proper, valid and binding. Interesting as is that history, we must decide the issues raised in this particular litigation according to the agreement in force at the time the litigation began.

The employees in the bindery department of the Company's plant are divided into journeymen, apprentices, and auxiliary workers, the auxiliary workers consisting of the semi-skilled and unskilled employees. On

---

* This is the second time this case has been before this Court (394 Pa. 400). When it was here the first time the defendant company had not been included as a party litigant. Accordingly the complaint was dismissed so that the company could be made a party since the seniority rights in controversy was based on a contract between the Company and the Union.

April 9, 1957, the Company entered into a two-year collective bargaining agreement with the Union. The seniority provision applying to all employees reads as follows: "The parties agree that seniority, as practiced in the past, shall be defined as an employee's length of continuous service with the Employer *from his first date of employment.* It is further agreed that seniority rights shall continue, whereby years of continuous service are to be recognized and such employees are to be given preference in working time." (Emphasis supplied).

On June 19, 1959, another two-year collective bargaining agreement was signed containing the same seniority provision above quoted. At meetings of the defendant local union on December 12, 1943, March 29, 1952 and March 31, 1957, the membership adopted and accepted as binding the practice and contract interpretation basing seniority on the length of last continuous employment.

The chancellor's finding of fact No. 18 reads as follows: "Plaintiffs have effectively exhausted their remedies for redress insofar as such redress could be sought through Union tribunals or under Union law, by bringing their claims for redress finally to the 29th biennial Convention of the International Brotherhood of Bookbinders, which under the Union law is the highest tribunal to which a member or members could bring his complaint. By action of said Convention, dated July 18, 1956, the appeal of these plaintiffs was decided adversely to the plaintiffs, the appeal having been turned down upon the report of the Appeals Committee, approved by the Convention, for the reason that to sustain the appeal would be to sanction a breach of contract between the Local Union and the Company."

The plaintiffs urge here that the practice of giving priority for employment to unskilled workers over skilled workers merely because the former have been

employed longer in the plant is illogical and unjust. Whether it is illogical and unjust depends to a great extent on the eyes which view the workings of the policy in question. An employee who has been a journeyman binder for only five years, but who has been employed in the plant for a total continuous period of 25 years, would not feel that he was taking undue advantage over an employee who has been a journeyman for six years, but who has been in the plant only six years in all.

However, regardless of the eyes through which the practice is seen, the fact remains that the rights of the plaintiffs can rise no higher than those guaranteed in the contract between the Company and the Union. Nor is there anything to suggest that the decision of the convention, where the plaintiffs submitted their grievance, was not reached through regular parliamentary procedure and in accordance with standards meeting the concept of due process of law.

Plaintiffs' counsel calls to our attention the fact that where there is a reduction in personnel in the plant and the bottom man on the journeyman roster is laid off, he cannot replace anybody on the auxiliary list even though the journeyman may have longer employment in the plant than any of the auxiliary workers, but if an auxiliary worker advances to journeyman's status he takes with him the seniority he has built up on the auxiliary list and his journeyman seniority will accordingly date from his first employment in the plant in any capacity. Counsel declares in an apt figure of speech that this makes of defendants' plant seniority, a "one-way street." There is color of merit to this argument, but the journeymen who are here complaining not only voluntarily entered into that one-way street but they have lived on it for years. They know the street, on what it abuts, and where it goes. To change it into a two-way thoroughfare, they need

only to convince a majority of the members of the Union who can re-route union traffic as they see fit.

Learned counsel in his brief submits that the policy under discussion is bad for many reasons. For instance, "Instead of encouraging the employees with ability and experience to advance to journeyman status, thereby furnishing the employees with incentive and according industry the benefits that flow from ability, the contention of the defendants has an adverse effect. It discourages advancement and ability. It does not utilize experience and intelligence. It puts no premium on skill."

All this may be true, but it is not for the Courts to tell the Union how it shall run its seniority classifications. The argument, logic and illustrations given of the inequities caused by the present seniority policy should be addressed to the Union. If the present practice works in such a manner as to deprive union men of what is fair and just they have it in their power to change the practice. The fact, however, that the local union and the international convention itself approved of the practice would indicate that it is something the union membership desires.

In defending the policy condemned by the plaintiff the Union has given an explanation which is not illogical and certainly not unsound. The Union brief states: "The purpose of adopting the policy in question was that outsiders coming in as journeymen from outside the plant were supplanting employees who had been members of the union and employees for many years and, in order to protect the job security of its members and local employees, the union and the company adopted the practice incorporated in the present contract *many years prior to the time plaintiffs were re-employed.*" (Emphasis supplied).

Thus, the plaintiffs cannot complain about a situation which they voluntarily accepted when they were re-employed.

In their pleadings the plaintiffs accuse the defendant Union of acting unlawfully, illegally, arbitrarily and in bad faith, but, as stated by the chancellor, "there is no competent evidence showing a breach by the Union of its fiduciary obligations to the plaintiffs. There is evidence, to be sure, of disagreement between the Union representatives and the plaintiffs concerning the seniority issue, but this cannot be considered as conduct amounting to bad faith, unreasonableness, or fraud. Moreover, the Union members on December 12, 1943; March 29, 1952, and March 31, 1957, by overwhelming vote, concurred in the position taken by the Union representatives on the seniority question."

Finally, the plaintiffs argue that the collective bargaining agreement violates those sections of the Union constitution which read: "All apprenticeships, advancement of any type, choice of working shifts, layoffs and hiring, shall be done on the basis of strict seniority. No journeyman shall have the privilege to receive a lower classification as a semi-skilled or auxiliary worker."

The chancellor held, in this respect, that there is no testimony that the company had any knowledge of these provisions of the Union constitution, but even assuming that knowledge, the constitution does not support "plaintiffs' argument and does not alter, control, or overrule the defendants mutual construction of the seniority provisions as meaning that journeymen's seniority is to be computed from the date of last continuous employment in the bindery department, regardless of classification as journeymen, apprentices, or auxiliary workers."

The decision of the lower court on every phase of the litigation here involved is substantiated by the record and, what was said by Justice Cohen in *Falsetti v. Local Union, U.M.W.A.*, 400 Pa. 145, could well be said of the adjudication by the learned chancellor: "To view this type of agreement otherwise would lead to chaos

and a breakdown in the entire scheme of collective bargaining for which the parties have provided and contracted. Instead of being able to rely on the disposition of employee grievances through the established machinery, the Company would face the constant threat of attempted individual enforcement through litigation. Union responsibility would be diminished and all parties would suffer. For these reasons, most, if not all, Union-management agreements of any magnitude in force throughout the Commonwealth are similarly drafted, with an eye toward reposing enforcement responsibility in the labor organization concerned."

Decree affirmed, costs to be divided equally among the parties.